UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALISON M. HALL, | Case No. 1:20-cv-01635-HBK |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING CASE TO COMMISSIONER[1] |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | (Doc. No. 19) |
| Defendant. | |

Alison M. Hall ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 19, 22). For the reasons stated, the Court orders this matter REMANDED for further administrative proceedings.

## I.   JURISDICTION

Plaintiff protectively filed for disability insurance benefits on March 31, 2018, alleging an

---

[1] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 10).

onset date of May 1, 2017. (AR 161-62). At the hearing, the alleged onset date was amended to August 9, 2018. (AR 33). Benefits were denied initially (AR 87-91), and upon reconsideration (AR 96-101). Plaintiff appeared before Administrative Law Judge Jane M. Maccione ("ALJ") on April 7, 2020. (AR 29-54). Plaintiff was represented by counsel and testified at the hearing. (*Id*.). On April 17, 2020, the ALJ issued an unfavorable decision (AR 12-28), and on September 14, 2020 the Appeals Council denied review (AR 1-6). The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## II.   BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 58 years old at the time of the hearing. (*See* AR 174). She has her GED. (AR 179). She lives with her husband and son. (*See* AR 48). Plaintiff has work history as a medical transcriber, office clerk, customer service representative, telephone solicitor, and fab check. (AR 34-43, 50). Plaintiff testified that she is unable to work because of pain "all the time," she cannot do anything repetitive, and she cannot sit, stand, or walk for long periods. (AR 44). She has severe pain in her neck, both shoulder, torso, and lower back. (AR 44-45). Plaintiff reported that she can sit for 15 minutes before she needs to stand up, stand for ten or fifteen minutes before she needs to sit down, and can walk half a block before she has to stop and rest. (AR 45). She uses a cane when walking because pain and spasms have made her fall "many times." (AR 49).

## III.   STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence

equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.  FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20

C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 9, 2018, the amended alleged onset date.  (AR 17).  At step two, the ALJ found that Plaintiff has the following severe impairments: arthritis of the bilateral hips, annular fissure and symmetric bulge of the L4 to L5 disc with lumbar spondylosis, degenerative disc disease of the cervical spine, and fibromyalgia.  (AR 17).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  (AR 19).  The ALJ then found that Plaintiff has the RFC

> to perform a range of light work as defined in 20 CFR 404.1567(b), except she is able to stand and/or walk for up to four hours, cumulatively, through the workday; she is able to sit for about six hours, cumulatively, through the workday.  She is able to climb ramps and stairs occasionally; she cannot climb ladders, ropes, or scaffolds.  She is able to balance, stoop, kneel, crouch, and crawl occasionally.  She is able to reach overhead frequently, bilaterally. She must avoid concentrated exposure to extremes of cold.  She must be protected from workplace hazards, such as unprotected heights and dangerous moving mechanical parts.  She requires a cane for ambulation.  Finally, she requires the ability to sit or stand, alternating every 30 minutes without time off task.

(AR 20).  At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a telephone solicitor.  (AR 23).  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from May 1, 2017, through the date of the decision.  (AR 23).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act.  (Doc. No. 1).  Plaintiff raises the

following issues for this Court's review:

    1.  Whether the ALJ properly considered the medical opinion evidence; and

    2.  Whether the ALJ properly considered Plaintiff's subjective complaints.

(Doc. No. 19 at 7-18).

### VII.   DISCUSSION

**A. Medical Opinion Evidence**

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior

6

> administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id*. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

Plaintiff argues the ALJ erroneously rejected the opinions of Plaintiff's treating physician, Athena Halol, M.D., particularly in light of Plaintiff's fibromyalgia diagnosis. (Doc. No. 19 at 7-12). Dr. Halol was Plaintiff's primary treatment provider from May 2018 through January 2020. In November 2018, March 2019, June 2019, and December 2019, Dr. Halol assessed identical restrictions on Plaintiff's ability to work, including only occasional standing/walking (up to 25% of shift); no bending, twisting, climbing ladders, and use of scaffold; occasional neck motions, reaching above shoulders, and repetitive hand motions; and no more than 5 pounds of lifting, carrying, pushing, and pulling. (AR 440, 575, 679, 857-58). The ALJ found Dr. Halol's opinions "not persuasive" because "they are not supported by nor consistent with the objective evidence, outlined above, which demonstrates that the claimant retains a greater functional capacity. Moreover, they fail to cite any objective findings or other evidence supporting any need for such

restrictive limitations."  (AR 22).

First, as to the consistency factor, the ALJ generally found Dr. Halol's opinion less persuasive because it is not consistent with the "objective evidence."  (AR 22).  In support of this finding, the ALJ relies on a brief summary, earlier in the decision, of "mostly minimal to mild or mild to moderate degenerative changes" noted on "imaging studies"; and examination findings that showed full range of motion, intact sensation without numbness or parasthesias, near full motor strength, normal reflexes, no atrophy, no edema, and "intact neurological functioning."  (AR 21 (citing AR 267-412, 413-34, 441-96, 530-1046)).  However, the ALJ also generally cited the same 741 pages of the entire 781-page longitudinal medical record that included "abnormal" findings of subjective pain, tenderness to palpation, muscle spasms, positive tender points, stiffness, a mild limp at times, and ambulation with a cane on occasion.  (AR 21).  Plaintiff argues this "short summary of the medical evidence offers nothing to explain the conclusion that the treatment record in this case does not support, or contradicts, Dr. Halol's opinions."  (Doc. No. 19 at 11).  The Court agrees.  While the longitudinal record contains evidence of "normal" clinical findings, as noted by Plaintiff, it also includes consistent reports by Plaintiff of difficulty sleeping, hand tremors, fatigue, and pain in her legs, thighs, neck, upper back, shoulders, torso, and feet; and ongoing clinical findings of positive Patrick's test, positive facet loading, pain at all fibromyalgia trigger points, limited range of motion, muscle spasms, antalgic gait, tenderness in lower back, hips, neck, shoulders, trunk, and feet. (Doc No. 19 at 9; AR 272, 275, 278-79, 285, 295, 300-01, 322, 331, 420-21, 428-29, 560, 574-76, 679-80, 784-85, 820, 858, 894, 897, 959, 963).  Plaintiff was also prescribed a cane after she experienced multiple falls.  (AR 428-29).

When considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Brown-Hunter*, 806 F.3d at 495 (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.  Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").  "This can

be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725.  In addition, as noted above, the Ninth Circuit recently clarified that under the new regulations for considering medical evidence, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate … how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted).  Here, the ALJ fails to explain how any of the specific limitations assessed by Dr. Halol are inconsistent with "objective findings" in the medical evidence of record, which is notably comprised largely of Dr. Halol's own treatment notes.  This is error.

Plaintiff additionally argues that the ALJ failed to adequately evaluate the medical evidence "in light of the unique nature of fibromyalgia." (Doc. No. 19 at 8).  Defendant did not address this issue.  While the ALJ did find that fibromyalgia was a severe impairment, and briefly mentioned that she "adequately considered" SSR 12-2p at step three, she did not consider the unique nature of fibromyalgia, and did not discuss SSR 12-2p at any point when considering the "objective" medical evidence.  *See* SSR 12-2p, 2012 WL 3104869 (providing guidance on how to evaluate fibromyalgia in disability claims).  It is well settled in the Ninth Circuit that fibromyalgia is a disease that eludes objective measurement.  *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).  "[A] person with fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'"  *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017).  Normal objective examination results can be "perfectly consistent with debilitating fibromyalgia."  *Id.* at 666. Thus, "[i]n evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods."  *Id.* at 662.  Namely, fibromyalgia "is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms,' and 'there are no laboratory test to confirm the diagnosis.'"  *Id.* at 666 (citing *Benecke*, 379 F.3d at 590) (noting that tender-point examinations constitute "objective medical evidence" of fibromyalgia).

Moreover, "the symptoms of fibromyalgia 'wax and wane,' and a person may have 'bad days and good days.'" *Id.*

While the ALJ generally summarized objective evidence that would tend to support her conclusion that Dr. Halol's opinion is inconsistent with the objective evidence, there is no analysis of the evidence typically associated with fibromyalgia. SSR 12-2p notes that fibromyalgia symptoms can wax and wane, and the symptoms associated with fibromyalgia, such as widespread pain and fatigue, can cause exertional limitations, and fibromyalgia can cause nonexertional limitations, such as postural and environmental limitations. SSR 12-2p, 2012 WL 3104869. Most notably, the ALJ failed to consider Dr. Halol's consistent findings of positive fibromyalgia tender-points, which themselves constitute objective medical evidence of fibromyalgia pursuant to SSR 12-2p. *Revels*, 874 F.3d at 663 (citing SSR 12-2p, at *2-3). Based on the foregoing, the ALJ's general finding that Dr. Halol's opinion was not persuasive because it was "not consistent with the objective evidence," including some normal findings of strength and sensation, with no specific analysis of evidence of Plaintiff's fibromyalgia, is not supported by substantial evidence.

Second, as to the supportability factor, the ALJ generally found that Dr. Halol "failed to cite any objective findings or other evidence supporting any need for such restrictive limitations." (AR 22). As noted above, when considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors,' are correct." *Reddick*, 157 F.3d at 725; *Brown-Hunter*, 806 F.3d at 495 (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). Here, the ALJ fails to explain with requisite specificity how the consistently abnormal clinical findings by Dr. Halol, as detailed above, and including consistently assessed pain at all the fibromyalgia trigger points, does not support the limitations opined by Dr. Halol.

Defendant argues that Dr. Halol's treatment notes "simply reflected Plaintiff's subjective

complaints and recommended conservative measures, including medications and physical [therapy], and referred to some minor abnormalities such as using a cane and having some tenderness and limited range of motion. She never explained how these mild findings would support an inability to lift more than 5 pounds, or an inability to stand only 25% of the day or walk only 25% of the day." (Doc. No. 22 at 9). In assessing the supportability factor under 20 C.F.R. §§ 404.1520c(c)(1), the ALJ is instructed that "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Thus, reasoning such as that offered by Defendant would be particularly relevant in the ALJ's assessment of the persuasiveness of Dr. Halol's opinion under the supportability factor. However, the Court is not permitted to consider reasoning that was not offered by the ALJ in the decision. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Here, the ALJ found Dr. Halol's opinion was less persuasive based solely on an alleged failure to cite objective findings to support "such restrictive limitations." (AR 22). However, as noted above, this is not supported by Dr. Halol's own clinical findings, often in the same treatment notes as the opined limitations, that Plaintiff was positive for muscle spasms, had limited range of motion, had pain on all fibromyalgia trigger points on palpation, used a cane, had antalgic and slow gait, and had tenderness across her neck, back, and hips. (AR 575, 679-80, 857-58). For all of these reasons, the ALJ's finding that Dr. Halol's opinion was less persuasive because of an alleged failure to cite "any objective findings" is not supported by substantial evidence.

Third, the ALJ found "both [of Dr. Halol's] opinions are expressly limited to specific and nonconsecutive three-month periods including November 27, 2018 through February 27, 2019 and December 5, 2019 through March 5, 2020, which demonstrates that the limitations were intended to be short term rather than permanent." (AR 22). To be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). As an initial matter, the Court notes that the ALJ does not specifically cite to any of the opinions provided by Dr. Halol; rather, she again generally cites medical records totaling 741 pages. Moreover, this reasoning is unsupported by the record. As noted by Plaintiff, Dr. Halol limited Plaintiff's work activities on four separate occasions over the course of more than a year between November 27, 2018 and December 5, 2019. It is well-taken that Dr. Halol did not specifically opine as to the overall expected duration of the assessed limitations; however, the ALJ also failed to support a finding that the limitations assessed across the relevant adjudicatory period "were intended to be short term rather than permanent." Thus, to the extent it was offered as a reason to reject Dr. Halol's opinion, a finding that her ongoing assessment of limitations was intended to be "short term" is not supported by substantial evidence.

The Court finds the ALJ's findings as to the consistency and supportability of Dr. Halol's opinions are not supported by substantial evidence. On remand the ALJ must reconsider Dr. Halol's opinions.

**B. Symptom Claims**

Plaintiff additionally challenges the ALJ's rejection of Plaintiff's symptom claims. (Doc. No. 19 at 12-18). The ALJ rejected Plaintiff's symptom claims because (1) they are not supported by the medical record including "notable objective findings"; (2) they are inconsistent with Plaintiff's daily activities; (3) Plaintiff has received conservative treatment that has provided "adequate relief of the alleged symptoms"; and (4) the record shows that Plaintiff continued to work "at some capacity" during the relevant adjudicatory period. (AR 21). Because the ALJ's assessment of Plaintiff's symptom claims is at least partially dependent on the ALJ's reevaluation of medical evidence, including the treating opinion of Dr. Halol, as discussed above, the Court declines to address these challenges in detail here. On remand, the ALJ is instructed to reconsider Plaintiff's symptom claims and the medical opinion evidence, and conduct a new sequential analysis, including a reassessment of the steps four and five finding if necessary.

/////

**C. Remedy**

Plaintiff contends that the Court should remand for a payment of benefits. (Doc. No. 19 at 18). The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered the medical evidence of record, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Instead, the Court remands this case for further proceedings. On remand, the ALJ should reevaluate all relevant medical opinions, as well as Plaintiff's symptom claims. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 19) is GRANTED.
2. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.
3. An application for attorney fees may be filed by separate motion.
4. The Clerk shall terminate any motions and deadlines and close this case.

Dated:    September 2, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE